UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RAYMOND BROWN,

       Plaintiff,                     CIVIL ACTION NO. 07-14955

      v.                              DISTRICT JUDGE AVERN COHN

BLAINE LAFLER, MEAGER,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
OLSON, S. TEED, ROSALIE PETTY,
MARIA ORTH, BETH DAVIS[1], MARY
GRAHEK, REBEKAH SOMMERVILLE[2],
and JOHN DOE 1-2,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

## I. Introduction

This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants failed to clear the ice from prison walkways, causing him to fall and break his leg, and thereafter failed to provide him with timely and appropriate medical care. The matter comes before the court on Defendants Lafler, Meager, Olson, Teed, Petty, Orth, and Grahek's Motion for Summary Judgment (D/E

---

[1]On September 9, 2008, defendant Davis filed a motion to dismiss and/or for summary judgment (D/E #37). Plaintiff's response to that motion is due October 6, 2008 (D/E #38).

[2]It is unclear if defendant Sommerville has been served in this matter. On April 24, 2008, this Court issued an order directing that she be served (D/E #32) and the U. S. Marshal Service filed an acknowledgment of receipt of the service of process documents.

#26). For the reasons discussed below, this Court recommends that defendants' motion be **GRANTED IN PART**.

Plaintiff's claim that Lafler, Meager and Olson failed to provide plaintiff with a safe environment should be dismissed, first, without prejudice pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust administrative remedies as to that claim prior to filing this lawsuit, and secondly, because it fails to present a cognizable federal claim. Moreover, while the two John Does from the complaint have not yet been identified and are not part of any motion, the Court should dismiss them *sua sponte* because the sole claim against them is the unexhausted claim that they failed to provide plaintiff with a safe environment.

Plaintiff's Eighth Amendment claim against defendants Lafler, Meager, Olson, Teed, Petty, Orth, Grahek, Davis and Sommerville, for denial of medical care should not be dismissed for failure to exhaust.[3]

---

[3] However, in order for plaintiff to prevail on his Eighth Amendment claim regarding his medical treatment, plaintiff must show that prison officials were deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Allegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections. Id. at 105-06, 97 S.Ct. 285. Disagreements over medical judgment or treatment cannot form the basis of an Eighth Amendment claim. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990). Though plaintiff has clearly endured significant hardship, his allegations may not amount to deliberate indifference. Rather, the record demonstrates the amount of medical attention he received from the defendants but defendants do not seek summary judgment based on the merits in this motion.

**II. Background**

Plaintiff was, at the times relevant to the facts underlying this action, an inmate at the St. Louis Correctional Facility (SLF) in St. Louis, MI. (Complaint, p. 2) According to his complaint, plaintiff is now an inmate at the Mid-Michigan Correctional Facility (STF) in St. Louis, Michigan. (Complaint, p. 2)

**A. Complaint**

On November 20, 2006, plaintiff filed a complaint against defendants in the United States District Court for the Eastern District of Michigan (D/E #2).[4] In that complaint, plaintiff alleges that defendants Lafler, Meager, Olson, the John Doe Physical Plant Supervisor and the John Doe Yard Crew Supervisor failed to provide plaintiff with a safe environment and that, as a result of those defendants' failure to clear the ice from prison walkways, plaintiff slipped on some ice during a controlled movement and broke his left leg.[5]

Plaintiff also alleges that defendants Lafler, Meager, Olson, Teed, Petty, Orth, Davis, Grahek and Sommerville failed to provide plaintiff with timely and appropriate medical care after plaintiff's fall. Specifically, plaintiff alleges that, after he went to the medical unit, Petty only pinched plaintiff's toes and said everything looked okay to her. Petty also asked plaintiff if plaintiff wanted drugs. Plaintiff was sent back to his housing unit, where he laid in bed for three days because of the pain. The following day, plaintiff was told he could have crutches, but he

---

[4] Plaintiff originally filed this action on October 31, 2007 in the United States District Court for the Western District of Michigan. On November 13, 2007, the case was transferred to this Court. (D/E #1)

[5] This does not on its face appear to state a claim under 42 U.S.C. § 1983.

was forced to travel two and one-eighth miles to get them. After three more days, plaintiff was taken to the hospital for x-rays. The x-rays showed that plaintiff's left leg was broken and that he needed surgery. Plaintiff underwent the surgery the next day.

After his surgery, plaintiff alleges that he was returned to his housing unit and, for twenty-six (26) days, no one from health care checked on plaintiff or changed plaintiff's bloody bandages. Moreover, all of plaintiff's follow-up appointments "were several days late." Plaintiff was eventually given a walking cast, but he soon realized he was still having trouble with his bones. Plaintiff planned to discuss his problems with his surgeon at plaintiff's next scheduled appointment, April 21, 2006, but he was not allowed to go to that appointment and he spent the next several months in excruciating pain. He attempted to secure medical relief numerous times, but his requests were either ignored or denied.

Plaintiff alleges that he was finally seen in the health care unit on August 22, 2006, and defendant Petty merely told plaintiff to elevate his leg and take Ibuprofen from the prison store. Plaintiff states he was in the health unit for a cardio check-up and he showed a Dr. Burton his leg. Dr. Burton said plaintiff's problems were obvious and asked why plaintiff had not sought care. Plaintiff advised Dr. Burton of plaintiff's numerous requests. Dr. Burton checked plaintiff's file and discovered that plaintiff never received follow-up care after his surgery and that plaintiff had never been released from his surgeon's care.

The complaint continues that plaintiff was again examined by his surgeon on September 18, 2006. The surgeon allegedly advised plaintiff that, in order to alleviate the pain, plaintiff needed surgery to remove the screw and washer from plaintiff's bone, but that plaintiff needed to

send a written request to health care. Plaintiff sent in the written request, but when he saw defendant Petty, she said that other people go years with the screws and plate in them. Plaintiff states he told Petty of his pain and need for surgery. She responded that she would check with the health care provider. Plaintiff also requested pain medication, but Petty told him to buy Ibuprofen from the prison store. Plaintiff underwent a surgery to remove the screws in his leg on December 2, 2006.

With respect with his claim regarding defendants' failure to clear ice from the prison walkways, plaintiff requests compensatory damages in excess of $50,000 as well as punitive damages in an amount deemed appropriate by the Court. With respect to his claim regarding defendants' failure to provide timely and appropriate medical care, plaintiff requests compensatory damages in excess of $1,000,000 as well as punitive damages in an amount deemed appropriate by the Court

**B. Defendants' Motion to Dismiss or for Summary Judgment**

On March 10, 2008, defendants Lafler, Meager, Olson, Teed, Petty, Orth, and Grahek filed the motion for summary judgment before the Court (D/E #26). In that motion, defendants argue that they are entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act.

On April 14, 2008, plaintiff filed a response to defendants' motion for summary judgment (D/E #30). In that response, plaintiff argues that he properly exhausted his administrative remedies with respect to his ongoing complaint regarding defendants' deliberate indifference to his medical care from November 25, 2005 to December 2006. Plaintiff also

-5-

argues that the state had a chance to address his claims on their merits, but it refused to do so. Plaintiff further argues that the MDOC failed to follow its own procedures during the procedures regarding the grievance plaintiff filed.

### III. Standards of Review

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) permits a district court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." In considering whether to grant a defendant's motion to dismiss pursuant to Rule 12(b)(6) a district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff. Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006). A district court need not, however, accept as true legal conclusions or unwarranted factual inferences. Kottmyer, 436 F.3d at 688. A claim survives a motion under Fed. R. Civ. P. 12(b)(6) "where its '[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.'" Zaluski v. United American Healthcare Corp., 527 F.3d 564, 570 (6th Cir. 2008), quoting Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007). "In reviewing a Rule 12(b)(6) motion to dismiss, [we treat] all well-pleaded allegations in the complaint as true, and [we] find dismissal proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." Zaluski, 527 F.3d at 570 quoting Downie v. City of Middleburg Heights, 301 F.3d 688, 693 (6th Cir. 2002) (internal citations omitted). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find

evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombley, 127 S.Ct. at 1970.[6]

Defendants also move for summary judgment pursuant to Fed. R. Civ. Pro. 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with

---

[6]Recently, the Sixth Circuit has noted that there remains some confusion as to when a court should require particular facts to be pled, as required by Twombly, and when a court should apply a more liberal pleading standard. U.S. v. Ford Motor Co., 532 F.3d 496, 503 n. 6 (6th Cir. 2008). As the Sixth Circuit noted, while Twombly held that a plaintiff must plead particular facts in their complaint. 127 S.Ct. at 1965, the Supreme Court held in Erickson v. Pardus, --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), a case decided just two weeks after Twombly, that a prisoner bringing a § 1983 claim against his captor is not required to state "[s]pecific facts" in their complaint; Erickson, 127 S.Ct. at 2200, and Twombly itself suggests that its holding may be limited to cases likely to produce "sprawling, costly, and hugely time-consuming" litigation. 127 S.Ct. at 1973 n. 6; see also Ford Motor Co., 532 F.3d at 503 n. 6 (6th Cir. 2008).

specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Grievance Procedure

Defendants argue that plaintiff's claims must be dismissed because he failed to properly exhaust all of his administrative remedies prior to bringing this action. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."

Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

The process applicable to the plaintiff's claims are set forth in MDOC Policy Directive 03.02.130 "Prisoner/Parolee Grievances" (Effective 12/19/2003).[7]  The policy provides for inmate submission of grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant."  (PD 03.02.130, ¶ E).  Pursuant to that policy, and in an effort to resolve grievable issues as soon as possible, prisoners are required to attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his control, prior to submitting a written grievance, the grievant shall.  (PD 03.02.130, ¶ R).  Moreover, the prisoner must send his Step I grievance to the facility Grievance Coordinator within five business days after attempting a resolution of the issue affecting him.  (PD 03.02.130, ¶ X)  Untimely grievances will be rejected by the Grievance Coordinator in the absence of a valid reason for the delay.  (PD 03.02.130, ¶ G)

---

[7]PD 03.02.130 is attached as Exhibit 3 to Defendants' Motion.

### B. Safe Environment

Plaintiff alleges that defendants Lafler, Meagher, Olson, the John Doe Physical Plant Supervisor and the John Doe Yard Crew Supervisor failed to provide a safe environment. Pursuant to the appendices to his complaint, plaintiff suffered his injury on November 25, 2005 or November 26, 2005. (Daily Journal, attached as Appendix B to Plaintiff's Complaint; Michigan Department of Corrections Nurse Protocol, attached as Appendix C to Plaintiff's Complaint) Plaintiff did not file grievances regarding that issue until seven or eight months later. In Grievance No. STF-06-07-00601[8], dated July 21, 2006 and received at Step I on July 28, 2006, plaintiff alleges that Lafler, Meagher and Olson, the John Doe Physical Plant Supervisor and the John Doe Yard Crew Supervisor failed to provide plaintiff with a safe and secure walkway on November 25, 2005. That grievance was rejected at Step I as untimely. Plaintiff appealed, but his appeal was denied at Step II because his initial grievance was untimely and because plaintiff failed to attempt to resolve his complaint with staff prior to filing his grievance. Plaintiff appealed that Step II denial, but his appeal was denied as Step III because the record supports the prior denial of plaintiff's grievance as untimely.

Given that evidence, plaintiff has failed to properly exhaust his administrative remedies with respect to his claim that Lafler, Meagher and Olson, the John Doe Physical Plant Supervisor and the John Doe Yard Crew Supervisor failed to provide plaintiff with a safe and secure walkway on November 25, 2005. As discussed above, the United States Supreme Court expressly held in Woodford that an inmate's exhaustion must be in compliance with applicable

---

[8]Grievance No. STF-06-07-00601 is attached as Exhibit 1 to Defendants' Motion.

grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 126 S.Ct. at 2386. In this case, plaintiff failed to comply with the applicable grievance procedures because he failed to file his Step I grievance within the deadline set by the MDOC and because he failed to attempt to resolve his complaint with staff prior to filing his grievance. Moreover, because plaintiff failed to comply with the applicable grievance procedures, his claim was denied as untimely and the MDOC never ruled on the merits. The Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S.Ct. at 923. In this case, plaintiff has failed to properly exhaust his administrative remedies with respect to his claim regarding a safe environment and the benefits of the exhaustion requirement have not be met. Therefore, that claim should be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a). Moreover, as plaintiff's claim regarding a safe environment is his sole claim against the John Doe defendants, those defendants should be dismissed.

Further, nothing in the complaint alleges any federal cause of action related to this claim. Plaintiff alleges a "failure to provide a safe environment." In order for plaintiff to state a claim cognizable in a § 1983 action, he must allege a violation of the Constitution or federal statute. To prevail on an Eighth Amendment claim under 42 U.S.C. § 1983, plaintiff must show that (1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison

officials involved had a sufficiently culpable state of mind, or knew of and disregarded an excessive risk to his health or safety. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). To the extent that plaintiff's allegations can be considered a conditions-of-confinement claim, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citation omitted).

Mere negligence is not enough. Id. The fact that an official did not alleviate a significant risk that he should have perceived but did not falls outside the realm of an Eighth Amendment violation. Farmer, 511 U.S. at 838.

Even if the court could entertain this claim pursuant to its supplemental jurisdiction, it would fail. The Michigan Court of Appeals holds that ice, even black ice, is an open and obvious danger. See, Laurel Woods Apartments v. Roumayah, 274 Mich. App. 631 (2007). In order to make such an open and obvious condition so unreasonably dangerous so as to give rise to a duty upon a premises possessor to remove or otherwise appropriately protect against the danger, there must be some special aspect or something out of the ordinary that makes harm likely or injury to be severe. Plaintiff has not pointed to anything like that here. Thus, defendants would be entitled to dismissal on this claim even if plaintiff had exhausted.

### C. Medical Care

Plaintiff also alleges that defendants Lafler, Meager, Olson, Teed, Petty, Orth, and Grahek, among others, failed to provide plaintiff with timely and appropriate medical care after plaintiff's fall. In Grievance No. STF-06-07-00602-28e[9], dated July 21, 2006 and received at Step I on July 28, 2006, plaintiff alleged that Lafler, Meagher, Olson and Orth, among others, denied or delayed adequate medical care following plaintiff's fall and that the denial of adequate medical care continued to the time plaintiff filed his grievance. That grievance was rejected at Step I as untimely. Plaintiff appealed, but his appeal was denied at Step II because his initial grievance was untimely and because it was determined that plaintiff had received adequate medical care. Plaintiff appealed that Step II denial, but his appeal was denied as Step III because the record supports the prior denial of plaintiff's grievance as untimely and the determination that plaintiff had received appropriate medical care.

Given that Grievance No. STF-06-07-00602-28e was denied as Step I because plaintiff failed to comply with MDOC's procedural rules, he could be seen as failing to exhaust his claim through that grievance because he failed to comply with MDOC's procedural rules. However, while Grievance No. STF-06-07-00602-28e was denied on procedural grounds at Step I, it was denied on the merits at Step II and that decision on the merits was upheld at Step III.[10] In light of those decisions on the merits, plaintiff should be deemed to have fully exhausted the claims

---

[9]Grievance No. STF-06-07-00602-28e is attached as Exhibit 2 to Defendants' Motion.

[10]As discussed above, Grievance No. STF-06-07-00602-28e was also denied on procedural grounds at Step II and Step III.

-13-

found in Grievance No. STF-06-07-00602-28e, despite the fact that he failed to comply with all procedural rules. Such a finding would be consistent with the goals of the exhaustion requirement as the Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S.Ct. at 923. In this case, the prison had an opportunity to address the complaints found in Grievance No. STF-06-07-00602-28e, it did in fact address those complaints on the merits, and this litigation was improved by the preparation of a useful record.[11] Therefore, plaintiff's claim that defendants Lafler, Meager, Olson, Teed, Petty, Orth, and Grahek failed to provide plaintiff with timely and appropriate medical care prior to the filing of his grievance should be allowed to proceed.

Moreover, some of plaintiff's allegations regarding medical care arose after plaintiff filed the grievance provided by defendants. For example, while the grievance regarding medical care provided by defendants was filed on July 21, 2006, the complaint alleges that deliberate indifference on the part of defendant Petty in August and September of 2006. The failure to exhaust administrative remedies is an affirmative defense that defendants have the burden of

---

[11]To the extent defendants argue that the grievance procedure failed to provide them with notice of plaintiff's claim, the Sixth Circuit has noted that, while the grievance procedure may promote early notice to those who might later be sued, that has not been thought to be one of the leading purposes of the exhaustion requirement. Jones, 127 S.Ct. at 923, citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation").

proving. Jones, 127 S.Ct. at 919. In this case, with respect to the claims arising after plaintiff filed the July 21, 2006 grievance, defendants have completely failed to meet that burden. Defendants point to a grievance filed prior to the alleged actions occurring and argue that the grievance is late. Defendants have not submitted any evidence that Grievance No. STF-06-07-00602-28e was the only grievance plaintiff filed based on the alleged inadequate medical care and plaintiff's claim should be allowed to proceed.

### V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion be **GRANTED IN PART**. Plaintiff's claim that Lafler, Meager and Olson failed to provide plaintiff with a safe environment should be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust administrative remedies as to that claim prior to filing this lawsuit. Moreover, while the two John Does from the complaint have not yet been identified, the Court should dismiss them *sua sponte* because the sole claim against them is the unexhausted claim that they failed to provide plaintiff will a safe environment.

Plaintiff's claim that defendants Lafler, Meager, Olson, Teed, Petty, Orth and Grahek failed to provide plaintiff with timely and appropriate medical care should be allowed to proceed. Plaintiff's claim that defendants Davis and Sommerville failed to provide plaintiff with timely and appropriate medical care also remains.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: September 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on September 29, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan