UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RAYMOND BROWN,

           Plaintiff,                       CIVIL ACTION NO. 07-14955

        v.                        DISTRICT JUDGE AVERN COHN

BLAINE LAFLER, MEAGER,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
OLSON, S. TEED, ROSALIE PETTY,
MARIA ORTH, BETH DAVIS, MARY
GRAHEK, REBEKAH SOMMERVILLE,
and JOHN DOE 1-2,

           Defendants.[1]

_____/


## REPORT AND RECOMMENDATION

## I.  Introduction

      This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), alleges that defendants failed to provide him

with timely and appropriate medical care.[2]  The matter comes before the court on defendants

Lafler, Meager, Olson, Teed, Petty, Orth, Davis, and Grahek's Motion for Summary Judgment

(D/E #51).  For the reasons discussed below, this court recommends that defendants' motion be

_____

      [1]Defendants Sommerville and John Doe 1-2 have previously been dismissed from this
action (D/E #43, #48).

      [2]As discussed below, plaintiff also alleged that defendants Lafler, Meagher, and Olson
violated his constitutional rights by failing to clear ice from a walkway and provide a safe
environment, but those claims have been dismissed (D/E #43).

**GRANTED** because there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law.

## II.  Background

### A. Complaint

Plaintiff was, at the times relevant to the facts underlying this action, an inmate at the St. Louis Correctional Facility (SLF) in St. Louis, MI.  (Complaint, p. 2)  According to his complaint, plaintiff is now an inmate at the Mid-Michigan Correctional Facility (STF) in St. Louis, Michigan.  (Complaint, p. 2)

On November 20, 2006, plaintiff filed a complaint against defendants in the United States District Court for the Eastern District of Michigan (D/E #2).[3]  In that complaint, plaintiff alleges that defendants Lafler, Meager, Olson, the John Doe Physical Plant Supervisor and the John Doe Yard Crew Supervisor failed to provide plaintiff with a safe environment and that, as a result of those defendants' failure to clear the ice from prison walkways, plaintiff slipped on some ice during a controlled movement and broke his left leg.  (Complaint, ¶ 1)

Plaintiff also alleges that defendants Lafler, Meager, Olson, Teed, Petty, Orth, Davis, Grahek and Sommerville failed to provide plaintiff with timely and appropriate medical care after plaintiff's fall.  Specifically, plaintiff alleges that he went to the medical unit after his fall and Petty only pinched plaintiff's toes, said everything looked okay to her, asked plaintiff if plaintiff wanted drugs, and sent plaintiff was sent back to his housing unit, where plaintiff laid in

---

[3]Plaintiff originally filed this action on October 31, 2007 in the United States District Court for the Western District of Michigan.  On November 13, 2007, the case was transferred to this court.  (D/E #1)

bed for three days because of the pain.  (Complaint, ¶ 2.1)  Plaintiff also alleges that, the

following day, plaintiff was told he could have crutches, but "they" refused to bring the crutches

to him and plaintiff was forced to travel two and one-eighth miles to get them, with other

inmates carrying plaintiff most of the way and plaintiff hopping 115 feet on his own while in

great pain.  (Complaint, ¶ 2.2)  Plaintiff further alleges that, after three more days, plaintiff was

taken to the hospital for x-rays and that the x-rays showed that plaintiff's left leg was broken and

that he needed surgery.  (Complaint, ¶ 2-3)

        According to plaintiff's complaint, he underwent surgery the next day and, after his

surgery, he was returned to his housing unit.  (Complaint, ¶ 2.4)  Plaintiff also claims that, for

twenty-six (26) days, no one from health care checked on plaintiff or changed plaintiff's bloody

bandages, and that all of plaintiff's follow-up appointments "were several days late."

(Complaint, ¶¶ 2.4-2.6)  Plaintiff further claims that he was eventually given a walking cast, but

he still had trouble with his bones and, because he was not allowed to go to an appointment with

his surgeon on April 21, 2006, he spent the next several months in excruciating pain.

(Complaint, ¶ 2.6)  According to plaintiff, he attempted to secure medical relief numerous times,

but his requests were either ignored or denied.  (Complaint, ¶ 2.6)

        Plaintiff also alleges that he was finally seen in the health care unit on August 22, 2006,

but Petty merely told plaintiff to elevate his leg and take Ibuprofen from the prison store.

(Complaint, ¶ 2.6)  Plaintiff further alleges that, on August 30, 2006, he was in the health unit for

a cardio check-up and he showed Dr. Burton his leg.  (Complaint, ¶ 2.6)  According to plaintiff,

Dr. Burton said plaintiff's problems were obvious and asked why plaintiff had not sought care.

(Complaint, ¶ 2.6)  Plaintiff also claims that plaintiff advised Dr. Burton of plaintiff's numerous requests, Dr. Burton checked plaintiff's file, and Dr. Burton discovered that plaintiff had never received follow-up care after his surgery or been released from his surgeon's care.  (Complaint, ¶ 2.6)

The complaint also states that plaintiff was examined by his surgeon on September 18, 2006, and the surgeon advised plaintiff that, in order to alleviate the pain, plaintiff needed surgery to remove the screw and washer from plaintiff's bone.  (Complaint, ¶ 2.6)  Plaintiff alleges that the surgeon also told plaintiff that plaintiff needed to send a written request to health care and that plaintiff subsequently sent in the written request.  (Complaint, ¶ 2.6)  Plaintiff also alleges that, when he saw Petty, she said other people go years with the screws and plate in them.  (Complaint, ¶ 2.6)  Plaintiff further alleges that he told Petty of his pain and need for surgery, but that she only responded that she would check with the health care provider and that plaintiff should buy Ibuprofen from the prison store.  (Complaint, ¶ 2.6)  According to the complaint, plaintiff underwent a surgery to remove the screws in his leg on December 2, 2006.  (Complaint, 2.6)

With respect with his claim regarding defendants' failure to clear ice from the prison walkways, plaintiff requests compensatory damages in excess of $50,000 as well as punitive damages in an amount deemed appropriate by the Court.  With respect to his claim regarding defendants' failure to provide timely and appropriate medical care, plaintiff requests compensatory damages in excess of $1,000,000 as well as punitive damages in an amount deemed appropriate by the Court.

**B. Previous Motions**

On March 10, 2008, defendants Lafler, Meager, Olson, Teed, Petty, Orth, and Grahek filed a motion for summary judgment in which they argued that they were entitled to summary judgment because plaintiff failed to properly exhaust his administrative remedies prior to filing suit (D/E #26). This court recommended that defendants' motion be granted in part, the claims that defendants failed to provide a safe environment be dismissed, the two John Doe defendants be dismissed, and plaintiff's Eighth Amendment claims against Lafler, Meager, Olson, Teed, Petty, Orth, and Grahek alleging a denial of medical care be allowed to proceed (D/E #39). Defendants objected to that Report and Recommendation (D/E #40). On November 13, 2008, the Honorable Avern Cohn issued an Order adopting this court's Report and Recommendation, dismissing plaintiff's claim that defendants failed to provide plaintiff with a safe environment, dismissing the two John Does from the case, and allowing plaintiff's Eighth Amendment claims to proceed (D/E #43).

On September 9, 2008, defendant Davis filed a motion for dismissal/summary judgment in which she also argued that plaintiff's claims should be dismissed due to lack of exhaustion (D/E #26). On December 5, 2008, this court issued a Report and Recommendation recommending that the motion be denied for the same reasons the earlier motion had been denied (D/E #45). This court also recommended that defendant Rebekah Sommerville be dismissed *sua sponte* because she has never been served and no good cause exists for excusing the lack of service (D/E #45). Neither side objected and, on December 19, 2008, Judge Cohn issued an

Order adopting this court's Report and Recommendation, dismissing Sommerville from the case, and allowing plaintiff's Eighth Amendment claim against Davis to proceed (D/E #48).

### C. Motion Before the Court

On January 20, 2009, defendants Lafler, Meager, Olson, Teed, Petty, Orth, Davis, and Grahek filed the motion for summary judgment pending before the court (D/E #51). In that motion, defendants argue that they are entitled to judgment as a matter of law on the claims against them in their official capacities because such claims are barred by the Eleventh Amendment to the United States Constitution. Defendants also argue that they are entitled to qualified immunity and judgment as a matter of law on the claims against them in their individual capacities because plaintiff cannot demonstrate that a constitutional violation occurred.

On February 2, 2009, plaintiff filed a response to defendants' motion for summary judgment (D/E #56). In that response, plaintiff argues that the court has already ruled that plaintiff's claim is not frivolous and that defendants' brief is deliberately misleading in an attempt to mislead the court as to the facts at issue. Plaintiff also argues that the Eleventh Amendment does not bar lawsuits filed in federal court over constitutional violations. Plaintiff further argues that all of the defendants were deliberately indifferent to plaintiff's serious medical needs and that the facts, with documentation, speak for themselves.

**III. Standard of Review**

Defendants move for summary judgment pursuant to Fed. R. Civ. Pro. 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.  Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Eleventh Amendment Immunity

Defendants argue that plaintiff's claims against them in their official capacities must be dismissed in light of their immunity under the Eleventh Amendment to the United States Constitution.  As argued by those defendants, the Eleventh Amendment does bar plaintiff's claims against them to the extent they are sued in their official capacities.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

Courts have construed that language broadly and the Eleventh Amendment generally bars suits in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v. Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).[4]  "Whether a suit against State officials in their official capacity is

---

[4]As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir. 2005), a State's immunity comes with exceptions; the immunity does not attach if the lawsuit is not against the State or an arm of the State, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the Federal Government brings the lawsuit. Additionally, a State may elect to waive that immunity through legislation through its conduct in litigation.  Ernst, 427 F.3d at 358.  None of these exceptions are applicable in this case.

deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'." Doe, 21 F.3d at 736.  Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case.  See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737.  Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants.  Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself.  Doe, 21 F.3d at 737.  The State of Michigan, however, has not consented to civil rights suits in federal court.  See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003).  Therefore, to the extent plaintiff's claims against officials are against defendants in their official capacities, the claims are barred by the Eleventh Amendment.

### B. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity and summary judgment with respect to plaintiff's claims against them in their individual capacities.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, __ U.S.__, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).  The privilege is an immunity from suit and not a mere defense to liability.  Saucier, 533 U.S. at 200.  As a result, courts have

"repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'"  Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988).  A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established.  Saucier, 533 U.S. at 201.  In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 129 S.Ct. at 818.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Saucier, 533 U.S. at 201.

As described above, this case involves a claim that defendants denied plaintiff medical care.  A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment and elementary principles concerning the Eighth Amendment's proscription of cruel and unusual punishment establish the government's obligation to provide medical care for those whom it is punishing by incarceration.  Estelle v.

Gamble, 429 U.S. 97, 102-104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a § 1983 claim for

a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner

must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter,

501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

      To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements: an

objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied

by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the

seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this

obviousness is itself sufficient to satisfy the objective component of the adequate medical care

test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo

County, 390 F.3d 890, 899 (6th Cir. 2004). However if the need involves minor needs or

non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying

medical evidence in the record to establish the detrimental effect of the delay in medical

treatment.'" Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d

739, 742 (6th Cir. 2001). To satisfy the subjective component of the adequate medical care test,

the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then

disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

      Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or

good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the

prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d

857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in

diagnosing a medical condition.  <u>Sanderfer v. Nichols</u>, 62 F.3d 151, 154 (6th Cir. 1995)

(citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted

'for the very purpose of causing harm or with knowledge that harm will result.'"  <u>Comstock</u>, 273

F.3d at 703, quoting <u>Farmer</u>, 511 U.S. at 835.  Put simply, "deliberate indifference to a

substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that

risk."  <u>Comstock</u>, 273 F.3d at 703, quoting <u>Farmer</u>, 511 U.S. at 835.

**1. Subjective Component**

Defendants argue that they are entitled to summary judgment because plaintiff cannot

satisfy the subjective component of his claim.  As discussed above, as the moving parties,

defendants bear the initial burden of demonstrating the absence of a genuine issue of fact and

plaintiff is only required to come forward with evidence if defendants meet that initial burden.

<u>Matsushita</u>, 475 U.S. at 587.  Here, defendants attached medical records related to plaintiff's

treatment as part of their motion for summary judgment.[5]

According to a Nurse Protocol-Muscle Strain/Sprain form in those plaintiff's medical

records, plaintiff reported to Health Services on November 25, 2005, on an unscheduled visit,

stating he had slipped on ice and twisted his ankle approximately 30 minutes earlier.  According

to plaintiff, he "was walking on a walkway outside the unit and slipped on ice.  When I hit the

ground I twisted my ankle.  My foot was displaced and I popped it back in place."  Defendant

Petty, a registered nurse, examined the plaintiff and recorded her findings of swelling to the

---

[5]The medical records are attached, under seal, as Exhibit A to defendants' motion for
summary judgment.  This court would note that the one hundred and twenty-seven (127) pages
of medical records are not Bates-stamped.  However, they were provided in chronological order.

plaintiff's left ankle, normal sensory response, limited movement, normal distal pulse, and warm distal temperature. According to Petty, plaintiff had "[a]lteration in comfort secondary to sprained ankle" and "impaired physical mobility." Petty also recorded that plaintiff was able to bear weight and walk. Petty further recorded that the injured area was elevated, ice was applied to it for 30 minutes, and the area was then wrapped in an ace wrap. Petty also wrote that plaintiff was given Aspirin E.C. 325 mg. for the pain while suggesting a "MSP assessment referral."

In a Progress Note dated November 26, 2006, defendant Orth, also a registered nurse, wrote an order for crutches after plaintiff complained that he could not bear weight on the ankle. According to Orth, plaintiff had a sprained/strained left foot and Orth showed plaintiff how to use the crutches.

According to a SOAP Note Summary assessment, during a November 28, 2005 health care contact with Petty and Dr. Jonathan Altman, the doctor assessed a sprained ankle and sent plaintiff to the local hospital emergency room for x-rays and evaluation. Additionally, a MDOC Emergency Room form, Discharge Instructions and Consultation Report provided that plaintiff was evaluated at Gratiot Medical Center and diagnosed with a fractured ankle after presenting there with a swollen ankle, but no numbness. Plaintiff was given pain medication and discharged with instructions to return the following morning for surgery. More Discharge Instructions, as well as Guidelines for Care, indicated that plaintiff was taken to the hospital the following afternoon for surgery to repair the fracture before being discharged, on November 30, 2005, and being given Motrin 600 mg.

Following the surgery, plaintiff was returned to the facility. According to a Progress Note dated November 30, 2005, Orth wrote a series of orders providing that plaintiff have extra

-13-

pillows, a bag of ice, a wheelchair for group therapy, and Ibuprofen 600 mg. Orth also ordered plaintiff to keep his left leg and ankle elevated, and to not bear weight. Another Orders Summary, dated December 9, 2005, and written by Petty, stated that plaintiff should be off work. On December 15, 2005, defendant Davis sent the discharge instructions to CMS.

As provided in plaintiff's medical records, on December 22, 2005, Dr. Thomas Haverbush, plaintiff's orthopedic surgeon, recorded that the plaintiff was comfortable and doing well following the surgery. Dr. Haverbush described plaintiff's surgery as "open reduction and internal rotation done for a bimalleolar fracture of left ankle." Dr. Haverbush also recorded that plaintiff's splint and sutures were removed, and there was no infection and no calf pain. Dr. Haverbush further recorded that a new cast was applied, and that he instructed that the plaintiff continue with his crutches. X-rays taken that day showed good position of the medial screw and the lateral plate and screws, as well as good joint ankle space. Dr. Haverbush also wrote that plaintiff should come back for another appointment in four weeks.

According to a Progress Note dated December 22, 2005, and written by defendant Grahek, a registered nurse, plaintiff was able to move his toes without difficulty and voiced no problems. Grahek also recorded that plaintiff had been scheduled for another MSP visit. An Orders Summary form written that same day by Orth also provided that plaintiff had been provided with crutches and two extra pillows, and that plaintiff was instructed to keep his left leg/ankle elevated and to stay off work. A SOAP Note summary dated December 29, 2005, provided that Dr. Altman examined the plaintiff, found that his pain was controlled, and noted that plaintiff would follow-up with the orthopedic specialist in three to four weeks.

-14-

In another report, Dr. Haverbush wrote that he saw plaintiff again on January 25, 2006, and that he took additional x-rays, which showed that the fracture was healing and that the plate and screw were holding.  Dr. Haverbush also placed plaintiff in a short walking cast and gave him instructions to return in five weeks to have the case removed.

On January 31, 2006, defendant Sommerville, a registered nurse, wrote Medical Detail orders providing for crutches, an extra pillow and a cast, as well as taking plaintiff off work. Sommerville also ordered that plaintiff's blood be drawn for testing.

In a March 6, 2006 kite, plaintiff contacted Health Services inquiring about his next follow-up appointment.  Petty processed the request on March 7, 2006, and indicated that the inquiry would be forwarded to the MSP.  According to that kite response, both the plaintiff's and Petty's perspective of the kite request was "routine."

As stated in a report by Dr. Haverbush, he treated plaintiff again on March 10, 2006.  At that time, Dr. Haverbush removed the walking cast and recorded that x-rays taken for the ankle that day looked satisfactory.  Dr. Haverbush also recorded that plaintiff could fully bear weight on his left ankle if it was comfortable to do so.  Plaintiff was placed in a short leg walking brace and Dr. Haverbush indicated that he wanted to see the plaintiff again in six weeks, at which point he would probably be able to discontinue to the air cast walking brace.

In an Orders Summary dated March 10, 2006, Sommerville wrote orders providing for an air walking brace, crutches, and extra socks.  A Progress Report written by Sommerville that same day also stated that plaintiff denied having any pain in his leg.

-15-

On April 3, 2006, Sommerville wrote a Progress Note stating that plaintiff had returned his crutches after indicating he no longer needed them. Sommerville also noted that plaintiff still had a walking boot.

As stated in a Progress Note written by Nurse Vicki Curtice and a Radiology Report written by Michael Henderson, D.O., on April 21, 2006, additional x-rays of his ankle were taken and mild swelling was seen in plaintiff's left ankle. Dr. Ann Burton's Progress Notes provided that she received the x-rays on April 25, 2006 and reviewed them on May 15, 2006.

Grahek wrote a SOAP Note Summary dated June 8, 2006 in which she stated that she assessed plaintiff with "[a]lteration in comfort r/t old ankle fx." Grahek also noted some discoloration and swelling at the ankle and improved range of motion. Grahek further noted that she would have the doctor review plaintiff's chart for a possible Motrin order.

In a kite dated August 18, 2006, plaintiff contacted health care staff indicating that his leg was sore and swollen. Petty responded to that kite on August 19, 2006, and saw plaintiff on August 22, 2006. Petty recorded plaintiff as stating that he worked and walked two miles a day. Petty also noted left ankle swelling and assessed plaintiff with "[a]lteration in comfort secondary to leg pain." Petty instructed plaintiff to cut back on walking, take the over-the-counter pain medication of his choice, elevate his leg as much as possible, and decrease activity for two months. A Progress Noted dated August 30, 2006, provided that plaintiff returned his air cast/boot on that date.

Dr. Haverbush's reports reflect that he saw plaintiff again on September 19, 2006. At that time, Dr. Haverbush recommended removal of the medial screw and washer from plaintiff's ankle, but he also noted that it was up to plaintiff to decide if he was having enough trouble.

That same date, Dr. Burton examined plaintiff at the jail.  According to Dr. Burton, no

surgery/consult was needed at that time and plaintiff would inform the doctor if and when he was

ready for surgery to have the hardware removed.

      In an Annual Health Screening form dated October 15, 2006, Petty noted that plaintiff

stated that he was ready to have the hardware removed and that plaintiff will file a medical kite

to that effect.  On October 31, 2006, while responding to a kite, Petty recorded that plaintiff

wanted to see medical staff because his leg was sore and swollen at the ankle.  An appointment

was scheduled for on or about November 6, 2006.

      After another medical kite, Petty examined plaintiff on November 2, 2006.  At that time,

Petty noted swelling in the ankle and reported plaintiff as saying that plaintiff was ready to have

the hardware removed.  Petty also reported that he would refer plaintiff to a MSP.

      In a Progress Note dated November 8, 2006, Dr. Burton noted that she saw plaintiff that

day, plaintiff had "pain level 3-7" and plaintiff indicated he was ready to have the hardware

removed.  Dr. Burton also noted that she would request authorization from CMS.

      Orth wrote a Progress Note on November 27, 2006, stating that she had instructed

plaintiff on what plaintiff must do prior to the surgery.  Dr. Haverbush removed the hardware on

November 30, 2006.  On December 1, 2006, Dr. Burton indicated that plaintiff reported minimal

pain when he returned to the facility.  Plaintiff was also given a detail for a crutch and instructed

to contact Health Services with any further medical problems or complaints.

      Subsequent Progress Notes and Treatment Records provided that plaintiff's dressings

were cleaned on December 4th, 5th, 6th, 7th, 8th, and 11th of 2006.  On December 12, 2006, Dr.

Haverbush removed the sutures from the second surgery.

In a Progress Note dated December 13, 2006, Dr.Burton noted that no follow-up was needed.  A Treatment Record dated December 13, 2006, provides that Grahek changed plaintiff's dressings.

In light of that evidence regarding the treatment of plaintiff's ankle, defendants have met their initial burden of demonstrating the absence of a genuine issue with respect to the subjective component of plaintiff's Eighth Amendment claims.  As demonstrated in the medical records provided by defendants, plaintiff was consistently treated from the day of his fall, November 25, 2005, through December 13, 2006, and that treatment ranged from providing plaintiff with medications to taking plaintiff off-site for surgeries.  Moreover, following his first surgery, plaintiff was provided with accommodations, such as being taken off work, and any necessary equipment, such as crutches, extra pillows and braces.  Similarly, plaintiff was also sent to follow-up visits with his orthopedic surgeon as requested by that surgeon and within the time frames recommended.

Given that defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact, the burden is on plaintiff to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587.  As discussed above, plaintiff cannot merely rest upon the allegations contained in his pleadings and, instead, he must submit evidence demonstrating that material issues of fact exist.  Banks, 330 F.3d at 892; Fed. R. Civ. P. 56(e).  In this case, plaintiff fails to provide any evidence demonstrating that there is a genuine issue for trial with respect to the subjective component of his deliberate indifference claim and, therefore, summary judgment is appropriate.  Plaintiff provides a

statement[6] from other inmates in which they assert that plaintiff was forced by an unidentified

security guard to walk to health care in order to pick up his crutches, but there is no suggestion

in that statement or in the complaint that any of the named defendants were involved.  Plaintiff

also provides what he identifies as a "Daily Journal"[7] but there was no foundation for those

unsworn documents and they appear to merely repeat plaintiff's complaints.  Consequently,

plaintiff's Daily Journal should not be considered.  See Smoot v. United Transp. Union, 246 F.3d

633, 649 (6th Cir. 2001) ("[I]t is well settled that only admissible evidence may be considered by

the trial court in ruling on a motion for summary judgment." (quoting Wiley v. United States, 20

F.3d 222, 226 (6th Cir. 1994))).  Plaintiff further provides modified copies of some of his

medical records[8] on which plaintiff has written on in order to point out the specific areas in

which he claims they are wrong.  However, in doing so, plaintiff has once again just repeated the

allegations found in his complaint in the form of inadmissible evidence and he has failed to

demonstrate that there is a genuine issue for trial.

 Moreover, even if plaintiff's evidence was acceptable, he has still failed to demonstrate a

genuine issue for trial because he concedes that he received treatment and he merely disagrees

with the quality of that treatment.  As discussed above, deliberate indifference is characterized

by obduracy and wantonness, not inadvertence or good faith error, Gibson, 963 F.2d at 853, and

---

  [6]Inmates' Statement; attached as Attachment A to Plaintiff's Response to Defendants' Motion for Summary Judgment.

  [7]Daily Journal; attached as Attachment B to Plaintiff's Response to Defendants' Motion for Summary Judgment.

  [8]Medical Records; attached as Attachment C to Plaintiff's Response to Defendants' Motion for Summary Judgment.

where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake, 537 F.2d at 860 n. 5.

### 2. Personal Involvment

Defendants Lafler, Meagher, Olson, and Teed also argue that they are entitled to qualified immunity and summary judgment because they were not personally involved in the alleged constitutional violation.  To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation.  Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam).  A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  See Turner v. City of Taylor,  412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).  Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.

While defendants Lafler, Meagher, Olson, and Teed identify themselves as supervisors of the prison in the motion, there is no evidence in the record suggesting that to be the case.

-20-

However, those defendants have still met their initial burden of demonstrating the absence of a genuine issue as to their personal involvement by providing the medical records. Those medical records do not mention Lafler, Meagher, Olson or Teed and they do not appear to have been involved in plaintiff's treatment in any way. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that defendants can meet their initial burden by identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact).

In his response, plaintiff asserts that Lafler is the facility Warden at SLF, Meager and Olson are the Deputy Wardens at SLF, Teed is the Health Unit Manager at SLF and that, given those positions, those defendants have a statutory obligation to protect the health, care, and safety of inmates. However, as discussed above, a respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983 and, at a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. See Turner, 412 F.3d at 629; Hays, 668 F.2d at 874; Shehee, 199 F.3d at 300. Plaintiff had produced absolutely no evidence suggesting any personal involvement by defendants Lafler, Meagher, Olson or Teed and, consequently, those defendants are entitled to summary judgment.

**V. Conclusion**

For the reasons discussed above, the court recommends that defendants' motion be **GRANTED** because there are no genuine issues of material fact in dispute and defendants are entitled to judgment as a matter of law.

-21-

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


S/Virginia M. Morgan                                  
Virginia M. Morgan
United States Magistrate Judge


Dated: June 12, 2009

_____

**PROOF OF SERVICE**

-22-

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on June 12, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan